CASE 6—PETITION ORDINARY—MARCH 11.

# Roberts v. McGraw, &c.

### APPEAL FROM PENDLETON CIRCUIT COURT.

1. EXCEPTIONS MUST EXHIBIT THE PAPERS OR EVIDENCE.—The Court of Appeals will not regard as error the exclusion of the record of another suit offered to be read to the jury as evidence where such record was not made part of the bill of exceptions, or shown to have been a suit between the same parties or their privies.

2. TRESPASS CAN NOT BE MAINTAINED BY A TENANT IN COMMON, or one claiming under him, against his co-tenant. (4 Bibb, 422; 8 Dana, 163.)

3. DELIVERY OF POSSESSION IS NOT NECESSARY IN PASSING TITLE TO REAL ESTATE.—Although by the common law in order to transmit the title and the possession it was necessary that there should be livery or attornment, these requisites are now by our law dispensed with, and the transfer of the title and right of possession carries for many purposes the possession of the land.

C. H. LEE, . . . . . . . . . . . . For Appellant,

CITED.

2 Bibb, 76, Belmore v. Caldwell.
2 Bibb, 591, North v. Cates.
4 Bibb, 218, Walton v. Clarke.
2 Marshall, 515, Owings v. Gibson.
5 J. J. Mar. 336, McLain v. Todd.
2 Littell, 60, Gatewood v. Head.
1 J. J. Mar. 459, Lampton v. Preston.
4 J. J. Mar. 19, Daniel v. Holland.
12 B. Mon. 157, Simon v. George.

W. W. IRELAND, ⎫
W. J. PERRIN,   ⎭ . . . . . . . . For Appellees.

CHIEF JUSTICE PETERS DELIVERED THE OPINION OF THE COURT.

This action was brought by appellant against appellees, and in his petition he alleges that he is and was the rightful

owner and in possession of a certain tract of land in Pendleton County, which he describes by metes and bounds; that being possessed of said land, he had thereon six or seven thousand staves which he had made, and that appellees, on the 30th of March, 1872, unlawfully and against his will, entered upon his said tract of land, and took and carried away six or seven hundred of his staves from and off his said land, and were threatening to take and carry away the residue of his staves and to destroy his valuable timber then standing on his said land; and he prayed for and obtained an order against them restraining them from committing other trespasses on said land.

After sufficiently traversing the allegations of the petition in their answer, the appellees allege that appellant is asserting some claim to the land described in the petition, under a pretended deed from the heirs of a certain S. T. Hauser; that at the date of said deed they were in the possession of said land, holding and claiming it adversely to the world as their own land; and that they, and those under whom they claim, have been in the continuous adverse possession for more than twenty years before the commencement of appellant's action.

On the trial in the court below a verdict and judgment were rendered for defendants, and the plaintiff's motion for a new trial having been overruled, he has appealed to this court. Appellant insists—

*First*—That the court below erred in refusing to permit him to read as evidence to the jury the record of a suit of Marshall & Adams against Landcaster, &c., in the Pendleton Circuit Court.

The following is all that appears in the bill of exceptions on the subject, viz.: "The plaintiff then offered the record of the suit of Marshall & Adams against Landcaster and others. Objected to by defendants; objections sustained by the court; and plaintiff excepted."

It does not appear, even by a statement of counsel, that either or any of the defendants in this action were defendants to that suit or were in privity with the defendants therein, nor does it appear that appellant or those under whom he claims were parties thereto. Therefore no foundation was laid or reason shown for the introduction of the record. Nor is the record incorporated and made a part of the bill of exceptions, so as to enable this court to judge of its competency. The ruling of the court below on that question we must regard as correct.

*Second*—That the record from the Pendleton County Court for a partition of the lands of Noah Ford, deceased, among his heirs was erroneously admitted as evidence.

Gulick, Cahill, and one or two other witnesses proved, without objection on the part of appellant, the partition of the two hundred acre tract of land, of which the land in controversy is a part, among the heirs of Noah Ford, sr., and described the respective parcels assigned to each one. The record objected to consists of the petition of Meshach Ford, &c. v. Shadrach Ford and others for the division of the land, the summons and an order of the court appointing Gulick and Cahill commissioners to divide it; and as they had proved that they did divide the land under the order of the court, and their evidence was not objected to, we do not perceive that appellant was prejudiced by the admission of the record.

The next error complained of is that the court qualified the two instructions asked for by appellant by instructions "1 and 2," asked for and given on motion of appellees. Said instructions and qualifications are as follows:

"1. If the jury believe, from all the evidence in the case, that the plaintiff was in possession of the land described in the petition at the time of the trespass complained of, and further believe that the defendants, or either of them, committed said trespass, then they must find for the plaintiff against

such defendants as are proved to be guilty of the trespass, and assess the damages to any amount not exceeding $500, the amount claimed in the petition.

"2. If the jury believe, from the evidence, that the land in controversy was in the possession of either Shadrach Ford or Noah Ford, and that they were holding it under Hauser and his heirs, and that they, or either of them who were thus holding, surrendered it up to plaintiff or the agent of Hauser's heirs, and that plaintiff took possession under said surrender, and so held it at the time of the trespass complained of, they must find for the plaintiff."

Which two instructions the court gave, with the following addition as a qualification, viz.: "Unless the jury shall find under first and second instructions given for defendants as follows: If the jury shall believe, from all the evidence in this case, that the land in controversy is within the two hundred acres claimed by Noah Ford, sr., adversely to the whole world, out to a marked boundary, and that since his death his children have succeeded him and continued in possession thereof so claiming, and that fifteen years had elapsed from the entry of said Ford before the institution of this suit, their verdict should be for the defendants. And although they may believe that Shadrach Ford, one of the children of Noah Ford, sr., did agree to hold under the grantor of plaintiff, such agreement did not bind the other children; and if they further believe that since the purchase of the land by the plaintiff it has been partitioned, still their verdict should be for the defendants, unless they believe the trespass complained of was committed on the land allotted in the division to Shadrach Ford."

These qualifications, when stripped of the verbiage which somewhat obscures their meaning, present this legal proposition: That if the jury believe, from the evidence, that Noah Ford, sr., took possession of a tract of land by a defined

marked boundary, including the land in controversy, and held
it continuously and adversely to all others during his life, and
that Shadrach Ford and his co-heirs after their father's death
succeeding him continued the adverse holding, and that they
and their father had thus held the land for more than fifteen
years before the institution of the suit, the law was for de-
fendants, unless they should find that after the death of Noah
Ford there had been a partition of the land among his heirs,
and that the alleged trespass was committed on that part of
the land allotted to Shadrach Ford.

Upon the death of Noah Ford intestate his heirs took the
land as coparceners, and can not have an action of trespass
against each other. (2 Black. 188.) If Shadrach Ford, one
of the co-heirs of his father, Noah Ford, sold or surrendered
his interest in the land to the appellant or to Hauser's heirs,
through whom he claims, appellant held as tenant in common
with said heirs and their vendee, and he could not maintain an
action of trespass against said heirs or their vendee, because
of their unity of interest and possession, or those who entered
by their command or that of their vendee. (Wright v. Chand-
ler, &c., 4 Bibb, 422; Jones, &c. v. Chiles, 8 Dana, 163.) Two
of the heirs of Noah Ford, as the evidence shows, had sold
their undivided parts of said land to appellee, McGraw.

No error, therefore, was committed by the court in adding
the qualifications to said instructions.

The third instruction is to the effect that if at the date of
the deed from Hauser's heirs to appellant, Ford's heirs were
in the adverse possession of the land on which the alleged
trespass was committed, that deed passed no title, and he
could not maintain the action.

Under the act against champerty a deed for land held ad-
versely at the time is void; and if that were the case, the deed
could not carry the possession; and unless appellant was in
the actual possession of the land he could not maintain tres-

pass against appellees. The instruction, therefore, was not erroneous.

The fourth and last instruction is as follows: "If the jury believe that Shady Ford entered into a verbal arrangement to take under Hauser, his holding could not thereby be changed from an adverse to an amicable one, provided they believe he, and those under whom he claimed, had been in the adverse possession thereof continuously for fifteen years next before the said arrangement, in which latter case the said Ford did not become the tenant of said Hauser or his heirs."

This instruction, in view of the evidence in this case, can not be sustained. Although by the common law in order to transmit the title and the possession it was necessary that there should be livery or attornment, these requisites are now by our law dispensed with, and the transfer of the title and right of possession carries for many purposes the possession of the land. Here Hauser's heirs claimed to have acquired the legal title of Shadrach Ford in the land, and exhibited a deed from him, with that claim of title on their part. The instruction withdrew from the jury the consideration of the fact whether or not said heirs were in possession at the date of their deed, and informed them, in effect, that a verbal surrender of possession of land by one who had had the legal title could not divest him of possession, although he may have conveyed his title to another. This was certainly erroneous. Appellant insisted that Shadrach Ford had conveyed all his interest in the land to said heirs; and if his deed passed his title to them, he could by a verbal agreement enter on or hold the land as their tenant.

The judgment must therefore, for the error in the last-named instruction, be reversed, and the cause be remanded for a new trial and further proceedings consistent herewith.